ROBERT FOWLER *v*. COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 7—529.]

**Continuance on Account of Absence of a Witness.**

No continuance will be granted to a defendant in a criminal cause on account of an absent witness where it appears that the evidence sought from him is merely cumulative.

**Instruction.**

In the trial of one charged with murder it is not error for the court to refuse to instruct the jury as to the law of manslaughter and self-defense, where there is no evidence even tending to prove that the killing was done in sudden heat and passion or in self-defense.

**Competency of Jurors.**

Jurors are not incompetent to try a criminal case where it is shown only that they have expressed an opinion to the effect that if the facts they have heard were true the accused ought to be hung.

**Separation of the Jury.**

It is not a sufficient ground for a new trial to show that the jury were allowed to separate during the trial of a murder case where nothing is shown to have occurred prejudicial to the rights of the accused.

### APPEAL FROM UNION CIRCUIT COURT.

January 8, 1886.

OPINION BY JUDGE PRYOR:

While in all cases of conviction for crime upon circumstantial testimony there must necessarily be some facts connected with the commission of the offense that when taken from the mass of the evidence would conduce to establish innocence, yet when the links in the chain of circumstances are unbroken and the mind led to the belief of guilt, because the facts developed are inconsistent with any other rational conclusion, it seldom happens that one innocent of the offense is made to suffer the severe penalties of the law.

That some one murdered Lida Bennett, an innocent, unoffending girl, is a conceded fact. She was dragged from the house and her throat cut from ear to ear, and while the motive for the commission of such a horrid crime by the accused is to some extent involved in, mystery, it is clearly shown that it was not for the purpose of robbery from her person or to satisfy the beastly passions of the murderer. Some other motive prompted the accused to take her life, and less discriminating minds than the triers of the issue below could readily discern from the facts in the case the object accomplished by the accused in taking the life of the unfortunate girl. It is not necessary for this court to discuss the testimony upon which the conviction is based. The jury below have said

that the accused is guilty beyond a reasonable doubt, and the facts in our opinion authorize such a conclusion. If an error of law has been committed to the prejudice of the accused, it then becomes the duty of this court to reverse the judgment; if not the verdict must stand.

An application was made for a continuance of the case because of the absence of witnesses whose testimony was said to be important to the defense. One of the witnesses was a sister of the accused, by whom he expected to prove that Lida Bennett and the accused were friendly and that the girl had been visiting his house. Her friendly feeling and social intercourse between the deceased and the accused and his family were shown by several of the witnesses for the commonwealth, by witnesses not related to either party, and who spoke of the friendly relations between the two. The evidence, in fact, conduced to show that it was the knowledge on the part of the accused that this friendly relation was soon to be severed that induced him to take the girl's life. She was about to marry some young man in an adjoining county; and while there was nothing in the conduct of the unfortunate girl that would reflect on her virtue, there is proof from which it might be inferred that, although the accused was married, his affections still clung to Lida Bennett, whom he first loved, and to prevent the consummation of the marriage that was about to take place he concluded to take her life.

Another absent witness was a physician who had administered to the accused some antidote for a snake bite that accused claimed had affected his mind about the time this alleged crime is said to have been committed. Whether this was for the purpose of sustaining a plea of insanity or of showing that he was without mind sufficient to prepare his defense does not distinctly appear. We shall assume, however, that the latter purpose was the object in view, and it afforded no ground for a continuance. All of his neighbors, or many of them at least, were amenable to the process of the court, and were in fact present and examined as witnesses. No want of mind was relied on either by way of excuse for the crime charged against him or that prevented him from giving to his counsel all the information necessary to his defense. There was no reason for a continuance of the case, or if so the facts developed in the trial show clearly that the accused was not prejudiced

by reason of the absence of the witnesses whose testimony he desired.

It is also argued that the court erred in refusing to give to the jury an instruction in regard to manslaughter and self-defense. We find nothing in the record from which even an inference might be drawn that the killing was done in sudden heat and passion or in self-defense; but on the contrary the party taking the life of the deceased must necessarily have been guilty of murder. If there was the slightest evidence to support this view of the case the instruction should have been given, but to suggest to a jury upon such facts as are established in the case that the accused might be acquitted on the ground of self-defense, or that the two might have engaged in mutual combat and the one killed the other in sudden heat and passion, would have been an insult to the intelligence of every fair minded juror and a mockery of justice.

In *Slagel v. Commonwealth*, 81 Ky. 485, 5 Ky. L. 545, the accused knocked the two O'Davises in the head with an axe, robbed them of their money and then threw their bodies over a cliff. Slagel was convicted on circumstantial testimony and complained as in this case that he was entitled to an instruction in regard to sudden heat and passion and self-defense. This court held that the facts authorized no such instruction. That was a stronger case for the accused than the one being considered. In that case no one saw the killing, and the two men killed were able to resist the attacks of Slagel, and here an affectionate girl was taken from her home and her throat cut, without any character of proof showing that there was or might have been an altercation between them at the time of the killing. The mind of a juror, however speculative, could not have imagined the existence of any such facts, from the proof in this case, that would authorize him to consider either proposition embraced in the instruction asked for by the defense, and it was therefore properly refused.

It is also assigned for error that one Brown of the regular panel, but not on the jury that tried the accused, was informed by two of the jurymen who did not sit in the case that they had formed an opinion and expressed it to the effect that the accused ought to be hung; that after the verdict had been rendered they offered to swear Brown with a view of establishing that fact on the motion for a new trial and the court refused their motion.

These jurors had taken their seats in the box and were examined by counsel as to their qualifications and fitness to try the issue. They were accepted, and after the verdict the court is asked to open the investigation with a view of showing their incapacity to serve. All they in fact said, if the affidavit is to be taken as true, was that if the facts they heard were true the accused ought to be hung. This did not disqualify them, and with the jurors in court and known to the presiding judge his discretion as to such matters should not be disregarded, but should be sustained unless of such an arbitrary character as to work injustice to the accused.

It is also claimed that the court below erred in not setting aside the verdict, because the jury were allowed to separate while considering the case, and some were permitted to converse with members of the jury. The separation of the jury was caused by the sickness of a juror, who was placed under the control of one deputy and the other jurors in charge of another deputy. It is claimed that one of the deputies was not sworn and therefore it was error to have placed him in charge. The judge certifies that he did swear him, and although the record fails to disclose that fact, yet it was fully competent upon such a question to show by the judge preparing the bill of exceptions that the law had been complied with. Besides it affirmatively appears by the proof offered by the state that the jury was not tampered with or the case alluded to by any one in their presence. Those outside of the court room, without knowing the nature of the charge given the jury in a case like this, or the impropriety of talking to a juror on business matters, sometimes approach a juror in the best of faith on matters foreign to the case in hand, and while the sheriff in charge should never allow any conversation with the jury and bystanders, when it affirmatively appears that the prisoner could in no wise have been affected by it no ground for reversal exists; and here again the trial court is in a better condition to know and judge of the purpose of those approaching a juror, and with the means of determining that question by an examination of all connected with such improper conduct, the judge's discretion should be regarded by this court.

That public sentiment demanded the punishment of the person guilty of the cruel murder affords no reason for mitigating that punishment when imposed, or for granting to the appellant a new trial. He was tried by an impartial jury presided over by an up-

right and impartial judge, and the facts of this record develop that
his defense was conducted by efficient and able counsel who seem
to have guarded with the utmost vigilance all the rights of the ac-
cused, and, although appointed by the court and without expecta-
tion of reward, have with that earnestness and love of justice that
pervades the profession done all within their power to save him
from a punishment that a jury of his country have said he de-
serves. The judgment below is *affirmed*.

*Hughes & Hughes, Long & Long, for appellant.*
*P..W. Hardin, for appellee.*